Mr. Justice McLEAhT
dissenting.
Sometime during the late, war with England, a company of. militia in the service of the United States, at Peoria, in Illinois, taking offence at the inhabitants- of the village, burnt it.
Congress, with the view of ascertaining the extent of the injury .and the names of the sufferers, on the 15th May, 1820, *339 passed an act, “that evéry person, or the legal representatives of every person, who claims a lot or lots in the village of Peoria, in the State of Illinois, shall, on or before the first day of October next, deliver to the register of the land office for the district of Edwardsville a notice in writing of his or her claim; and it shall be the duty of the said register to máke to the Secretary of the Treasury a report of all claims filed with the said register, with the substance of the evidence thereof; and also his opinion, and such remarks respecting the claims as he may think proper to make; which report, together with a list of the claims which in the opinion of the said register ought to be confirmed, shall be laid by the Secretary of the Treasury before Congress, for their determination.”
The report was made, as required in the above act, by E. Coles, Esq., register, on the 10th of November, 1820. By that report, No. 7, Thomas Forsyth claims “ a lot of three hundred feet in front by three hundred feet in depth, French measure, in the village of Peoria, and bounded eastwardly by a street separating it from the Illinois river, northwardly by a cross street, westwardly by a back street, and southwardly by a lot claimed by Jacques Mette.”
On the 3d of March, 1823, Congress passéd an act, which declares, “that there is hereby granted to each of the French and Canadian inhabitants, and other settlers, in the village of Peoria, in the State of Illinois, whose claims are contained in a report made by the register of the land office at Edwards-ville, in pursuance of the act of Congress approved May the 15th, 1820, and who had settled a lot in the village aforesaid prior to the 1st day of January, 1813, and who had not heretofore received a confirmation of claims or donation of any tract of land or village lot from the United States, the lot so settled on and improved, where the same shall not exceed two acres,.”
The second section made it the duty of the surveyor of the public lands of the United States, for that district, to cause a survey to be made of the several lots, and to designate on a plat thereof .the lot confirmed and set apart to each claimant, and forward the same- to .the Secretáiy of the Treasury, who shall cause patents to be issued in favor of -such claimants, as in other cases.
In the action of ejectment brought by Forsyth, as above stated, to recover possession of lot No. 7, described, it was agreed that upon the trial it shall be admitted that the plaintiff has the title .of Thomas Forsyth in and to the land sued for, by descent, and purchase, and conveyance; and also that .the, defendants have had the actual possession of the land for which they are respectively sued, by residence thereon, for ten *340 years next preceding the cpmmencement of the suit; and that John L. Bogardus, under whom they claim, had possession of the southeast fractional quarter of section nine, in tqwnship eight north, of range eight east, upon which the land sued for is situated, claiming the same under pre-emption right more • than twenty years before the commencement of these suits, hut he never had the actual possession of that part of said fractional quarter section sued for; and that said “defendants respectively had vested in them, before the commencement of this suit, all the right of Bogardus.”
A patent was issued to Bogardus for the southern fractional quarter of section nine, in township eight north, of range east, containing twenty-three acres and ninety-three hundredths of an acre, &c.; “subject, however, to all the rights of any and all persons claiming under the act of Congress of 8d March, 1823, entitled ‘An act to confirm certain maims to lots in the village of Peoria, in the State of Illinois.’ ”
The defendants rely on the statute of limitations of 1827, which requires that the possession should be by actual residence on the land, under a connected title in law or equity, deducible of record from the United States.
The court instructed the jury that the title claimed under Bogardus did not protect them under the statute.
This is held by this court to be an error, for which the judgment is reversed.
The error of the court consists in giving a construction not only to a'written instrument, but to a patent. That it is the province of the court to construe such a paper, will not be controverted. The patent conveyed to Bogardus the land described, “subject, however, to all the rights, of any and all persons claiming under the act of Congress of the 3d March, 1823, entitled ‘An act to confirm certain claims to lots in the village of Peoria, in the State of Illinois.’ ”
‘ The lot in controversy was claimed under the act of 1823, which declared, “that there is hereby granted to each of the French and Canadian inhabitants, and other settlers, in the village of Peoria, in the State of Ulinois, whose claims are contained in a report made by the register of the land office at Edwardsville, in pursuance of the act of Congress approved May 15th, 1820, and who had settled a lot in the village aforesaid prior to the 1st of January, 1813, and who have not heretofore received a confirmation of claims or donation of any tract of land or village lot of the United States, the lot so settled upon and improved; where the same shall not exceed two acres,” &c.
The right made subject to the patent was a legal right; it *341 was a grant' by Congress, which this court has recognised as the highest grade of title'. A patent is issued by a ministerial officer, who is subject to error, but the legislative action is not to be doubted.
The survey of the lot was not made until 1st September, 1840, and the patent was issued to Forsyth, December 16, 1845.
In the case of Ballance v. Forsyth, (13 Howard, 24,) this qourt say: “If the patent to Bogardus be of prior date, the reservation in the patent, and also in his entry, was sufficient notice that the title to those lots did not pass; and this exception is sufficiently shown by- the acts of the Government.” And again: “ The statute did not protect the possession of the defendant below. His patent excepted those lots; of course, he had no title under it for the lots excepted.”
Until the case before us was reversed for error by the district judges who conformed to the above decision, I did not suppose that any one could doubt the correctness of the decision. Bogardus, in 1838, took a grant from the United States, subject to Forsyth’s right, thereby recognising it, and consequently from that time he held it in subordination to Forsyth’s title. If it he admitted that the fee did not pass to Forsyth until the patent issued in 1845, the patent had relation back to the act of 1823, and operated from that time. The report of the register defined the boundaries of the lot as specifically as the survey, by reason of which, ,the lot was as well known, it is presumed, to' the public, before the survey as afterwards. This may not have been the case with all the lots.
Let any one read the patent to Bogardus, and ask himself the question, whether the United States intended to. convey the lots to which the patent was made1 subject, and the answer must be, that they did not. By the act of 1823, they granted those lots to the French settlers, who, by the report of the register, were entitled to them under the act of 1820. It would have been an act of bad faith in the Government, after the act of 1823, to convey any one of those lots; and, on reading the patent, it is clear they did not intend to convey any one of them. -It is said, suppose the French settlers had not claimed the lots, would not Bogardus have had a- right to them? Such a supposition cannot be raised against the facts prpved. The title of Forsyth was of prior date, and of a higher nature, than that of Bogardus. His title was subordinate, as expressed upon its face.
In the case of Hawkins v. Barney’s Lessee, (9 Curtis, 428,) the same question was before this court. Barney conveyed fifty thousand acres of land, in Kentucky, to Oliver; sometime afterwards, Oliver reconveyed the same tract to Barney, in *342 ■which deed were recited several conveyances of parcels of the tract to several individuals, and particularly one of 11,000 acres, to one Berriman. Barney brought an ejectment- against Hawkins, and proved that he had entered on the fifty thousand acre tract. This court held his action could not he sustained, unless he proved the defendant was not only in possession of the large tract, hut he must show that the possession was not upon any one of the tracts sold and conveyed.
To apply the principle to the case before us. Had Bogardus brought an action of ejectment to sustain it, he must have proved the trespasser was within his patent, and outside of ány one of the reserved lots. The words, “subject to all the rights of any persons under the act of 1823,” showed that those rights were not granted by the patent; and if-Bogardus himself could not have recovered, it is strange how the defendants could recover, who claim to-be in possession under his patent.
The agreed case admits that the “defendants respectively had vested in them, before' the commencement of this suit, all. the right of Bogardus.” But whether this possession under the right of Bogardus was for a day or a year, is nowhere shown by the evidence; and unless I am mistaken, the statute requires a seven years’ possession under title to protect the trespasser, and in effect give him the land.
Bogardus was. in possession, claiming a pre-emption, but 1 do not understand, from the opinion of the court, that such a possession will run, even against the Ereneh claimants. Bogardus himself was a trespasser on the lands of the United States, and until he received his patent in 1838,1 suppose he could not set up a claim to the land under title.
I hold, and can maintain, that the instruction of the district judge was right, in saying that the patent of Bogardus did not grant or convey the ground in controversy. And if it did, there was no such possession under it, which, by the statute of limitations, protected the right of the defendants.